688 A.2d 436

Ronald Lee BROADWATER, Sr., et al.

v.

Matilda Woodward DORSEY, et vir.

No. 6, Sept. Term, 1996.

Court of Appeals of Maryland.

Feb. 14, 1997.

Motion for Reconsideration Denied
March 11, 1997.

Matthew S. Sturtz, E. Hutchinson Robbins, Jr., Miles & Stockbridge, on brief, Baltimore, for Petitioners.

John T. Ward, Ward, Kershaw and Minton, on brief, Baltimore, for Respondents.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ., and ROBERT C. MURPHY, Judge (retired), specially assigned.

RAKER, Judge.

This case concerns the tort doctrine of negligent entrustment. The issue we must decide is whether the parents of an adult child who sell or who make a gift of an automobile to their adult child, with knowledge of the child's reckless conduct, may be held answerable in damages to a third person subsequently injured by the son's negligent operation of the automobile. The claim of liability is predicated upon the principle of legal responsibility for the negligent entrustment of an automobile to an allegedly incompetent driver. Specifically, we must decide whether a parent who negligently entrusts a chattel to an adult son is responsible for damages subsequently incurred by a third party when the parent does not have the power of control over either the automobile or the son at the time of the accident. We conclude that parents who sell or give an automobile to an adult child are not responsible for damages when they lack the power to control the child or the automobile.

On October 2, 1992, Ronald L. Broadwater, Jr., then age twenty-six, drove his automobile across the center line, colliding head-on into the vehicle driven by Matilda Dorsey and seriously injuring her. Along with her husband Dr. James H. Dorsey, she filed a lawsuit against Ronald, Jr., and Dr. and Mrs. Ronald L. Broadwater, Sr. The complaint alleged that Ronald, Jr., the owner of the automobile, breached his duty to drive his vehicle in a safe, reasonable and non-negligent manner, and the breach of that duty resulted in injury to the plaintiff. The complaint further alleged that Dr. and Mrs.

Broadwater negligently entrusted the automobile to Ronald, Jr., their adult son, by purchasing the vehicle and giving it to Ronald, Jr., knowing at the time they gave the vehicle to Ronald, Jr. it was likely, because of his driving record and drug abuse problems, that he would drive the vehicle recklessly and pose an unreasonable risk of physical harm to others.

The case proceeded to trial in the Circuit Court for Baltimore County. The Broadwaters filed a motion for summary judgment on the grounds that they had no power to control the use of the vehicle at the time of the accident, and that they lacked sufficient knowledge to put them on notice that their son posed an unreasonable risk of harm to others. The court denied the motion. The jury found that Ronald, Jr. negligently operated his motor vehicle on October 2, 1992, and as a result caused injury to Mrs. Dorsey. The jury also found that Dr. and Mrs. Broadwater had negligently entrusted the Mazda RX 7 to Ronald, Jr. The jury awarded damages to the plaintiffs, Dr. and Mrs. Dorsey.

Dr. and Mrs. Broadwater appealed to the Court of Special Appeals, contending that the trial court had erred in concluding that they could be liable on a theory of negligent entrustment. The Court of Special Appeals, by a divided panel, affirmed the judgment. *Broadwater v. Dorsey,* 107 Md.App. 58, 666 A.2d 1282 (1995). This Court granted certiorari.

The facts were set out in great detail by the intermediate appellate court as follows:

"In November, 1990, appellants owned or had in their possession five cars, all insured by State Farm Mutual Automobile Insurance Company—a 1986 Mercedes, a 1988 Toyota, a 1990 Plymouth Laser, a 1956 Ford Thunderbird, and a 1988 Corvette. The Ford and the Corvette, they contended, were not driven.

"Ronald, Jr. was, to say the least, not a highly motivated person. He was born in June, 1965, and thus, by November, 1990, was 25 years old. After graduating high school in 1984 or 1985 (when he was 19 or 20), he attended three different colleges for varying periods but, despite five or six years of

effort, had not graduated from any of them and had not even earned sufficient credits for an A.A. degree. Except for a brief period when he lived in an apartment paid for by his parents while he was attending one of the colleges, he lived at home or stayed with friends. Although he worked part-time for his father for a while (there is some conflict in the evidence as to whether he was paid for his services), he never had a steady, permanent job. He was almost totally supported by his parents.

"Between August, 1982 and October, 1989, Ronald, Jr. amassed 10 points on his driving record, for seven separate incidents of failing to obey traffic signals or speeding. Mrs. Broadwater paid a number of fines for her son and also paid for an attorney to represent him on one or more occasions. In 1980, when he was 15, Ronald, Jr. was involved in a motorcycle accident, as a result of which, in 1983, Dr. Broadwater was sued for having negligently entrusted the motorcycle to his son. The case was apparently settled.

"Beginning in November, 1990, and continuing through February, 1991, State Farm informed the Broadwaters that it would decline to renew the insurance on any of the five vehicles then owned by them unless Ronald, Jr. was excluded from the coverage. Those notices were each based on three recent violations by Ronald, Jr.—speeding in April and October, 1989 and failing to obey a traffic signal in July, 1988—and one accident. In October, 1990, he ran into a concrete bridge. Although the Broadwaters initially protested these notices, they eventually acceded to State Farm's decision and, in August, 1991, signed an agreement excluding Ronald, Jr. from coverage.

"The son's irresponsible conduct may, in part, be explained by the fact that he was a drug addict. On September 20, 1991, the Broadwaters filed a petition with the District Court for an emergency evaluation of Ronald, Jr. Although Dr. Broadwater claimed in his testimony that the evaluation was "so that he would be forced to have his bipolar mental problems straightened out," in the petition he and his wife

noted that Ronald, Jr. had a history of drug abuse dating back to 1980. During the most recent period, 1989–1991, they implied that he was taking cocaine intravenously in both arms. In response to the question asking them to document the behavior leading them to believe that their son had a mental disorder and was in imminent danger of doing bodily harm to himself or others, they wrote, in longhand:

"Drug Abuse (Addiction)—1980–83 (Cocaine + Pot) Leading to seizure—transfer U. of Md. Shock Trauma—Never would agree to treatment—1989–91 back on drugs + IV cocaine (needle tracks both arms) June '91—Again would not agree to treatment—Last 8 wks behavior erratic—stole 2 of our cars [unclear] abuse to his mother could not finish college [unclear] Talks irrational. Has been constantly stealing money from parents. Life seems to be controlled by need for drugs. He is threat to his self mentally + physically + to the community."

"As a result of this petition, Ronald, Jr. was committed for evaluation and, according to his mother, remained hospitalized for four to six weeks. She was asked, but claimed that she could not recall, whether, as a further result of the petition, criminal charges were filed against Ronald, Jr. for assaulting and battering Mrs. Broadwater.

"On December 16, 1991, Mrs. Broadwater purchased a 1982 Mazda RX 7 sports car from a friend for $2,750. On or about February 2, 1992, Mrs. Broadwater transferred the car to Ronald, Jr., who had the vehicle retitled in his name. Prior to that transfer, Ronald, Jr. received three additional speeding tickets, one of which had already resulted in a conviction.

"Although the Broadwaters insist that the transfer was an arms-length sale, the fact is that the son paid nothing for the car and the Broadwaters paid the insurance premium to permit their son to obtain the minimum required insurance coverage from the Maryland Automobile Insurance Fund. In a document dated February 2, 1993, which he captioned as "Agreement of repayment," and on which he referenced the Mazda, Ronald, Jr. stated "I, Ronald L. Broadwater, Jr. noted

on this date that I agree to pay back Eleanor V. and Ronald L. Broadwater Sr. the sum of $2750.00, for the above automobile when I have completed my college degree." As of July, 1994, no payments had been made on that promise.

"Once the car was turned over to Ronald, Jr., he apparently used and regarded it as his own. As noted, the Broadwaters disclaimed much knowledge about their son's activities and whereabouts thereafter. The accident that led to this lawsuit occurred in October, 1992. Ronald, Jr. was driving the Mazda that had been given to him by his mother eight months earlier."

*Broadwater,* 107 Md.App. at 62–65, 666 A.2d at 1284–85.

■ The doctrine of negligent entrustment as stated in the Second Restatement of Torts § 390 and adopted in Maryland provides:

> One who supplies directly or through a third person a chattel for use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

RESTATEMENT (SECOND) OF TORTS § 390 (1965); *see, e.g., Neale v. Wright,* 322 Md. 8, 13–14, 585 A.2d 196, 198–99 (1991); *Kahlenberg v. Goldstein,* 290 Md. 477, 488–89, 431 A.2d 76, 83 (1981); *Morrell v. Williams,* 279 Md. 497, 503, 366 A.2d 1040, 1043 (1976); *Curley v. General Valet Service,* 270 Md. 248, 255, 311 A.2d 231, 235 (1973); *Snowhite v. State, Use of Tennant,* 243 Md. 291, 311, 221 A.2d 342, 353–54 (1966); *Rounds v. Phillips (Rounds I),* 166 Md. 151, 160–61, 170 A. 532, 535 (1934).

■ The issue at the heart of this case is whether the parents of an adult child, who with knowledge of their child's incompetence, give or sell that child an automobile are to be considered "suppliers" for purposes of § 390 of the Restatement. Because a "supplier," in terms of the Restatement,

must have the right to control the chattel, we must determine whether the supplier's control over the chattel should be measured at the time of the "entrustment" or at the time of the negligent act of the "entrustee" resulting in injury.

In its review of this case, the Court of Special Appeals held that "[t]he right to permit and the power to prohibit must be considered as of the time of the entrustment." *Id.* at 68, 666 A.2d at 1287. The court concluded that the continuing ability to control the chattel is not required for a *prima facie* case of negligent entrustment; control need only exist at the time of the entrustment. The court noted:

> The tort is founded upon an entrustment—the supply of a chattel by the defendant to another person. That necessarily presumes that the defendant had a choice whether to supply the chattel or not. Control has to be viewed in that context. The tort does not rest on any vicarious liability— on imputing to the supplier the negligence of the entrustee—but rather on the direct negligence of the supplier in supplying the chattel in the first place. That negligence must, of necessity, be viewed as of the time of the entrustment, not as of the time the entrustee improperly uses the entrusted chattel.

*Id.* at 67, 666 A.2d at 1287. The court further reasoned that a person cannot escape liability by deliberately and negligently placing a chattel in the hands of another under circumstances set out in Restatement § 390 and thereby

> effectively relinquish[ ] all practical ability thereafter to prohibit or limit the use of the chattel by the entrustee. It would be wholly inconsistent with the public policy underlying the tort to regard such an act as providing a greater advantage to the supplier than if he retained the power of control but declined to exercise it.

*Id.* at 69, 666 A.2d at 1287–88. The intermediate appellate court held that Petitioners had control at the time of entrustment, that they knew of Ronald, Jr.'s reckless propensities, and that the negligent entrustment of the vehicle was the

proximate cause of Respondents' injuries. *Id.* at 67–72, 666 A.2d at 1286–89.

Judge Cathell dissented. He agreed with the majority's view of the facts, the character of Ronald, Jr., and the Broadwaters' knowledge of their son's behavior. He parted company with the majority on the scope and application of the doctrine of negligent entrustment. Recognizing that the "position of the majority is one that is logically supportable under an expansive (virtually all inclusive) interpretation of the applicability of the tort," the dissent suggested that the better position for this Court to adopt would be a more limited application of the doctrine which would, "in a sales context, require the transferor to retain the legal right to control the instrumentality or have a legal responsibility to control the buyer." *Id.* at 75, 666 A.2d at 1291 (Cathell, J., dissenting).

The dissent further suggested that in order to limit the application of negligent entrustment appropriately, the entrustor must retain a legal right of control over either the chattel or its user. The dissent noted:

> If (1) the power to control the vehicle or (2) the power to control its operator—or both—exists *and* the "entrustor" has knowledge of dangerous propensities of the driver, it is clear that the requirements of the tort are met.

*Id.* at 83, 666 A.2d at 1295. Otherwise, the dissent reasoned, liability for negligent entrustment would be too expansive and would subject all vendors to liability long after the vendor had relinquished control over the chattel.

Dr. and Mrs. Broadwater contend that the relevant time period is the time of the recipient's subsequent negligent use of the chattel. If the defendant has the right to permit or the power to prohibit the use of the chattel entrusted at that time, then the defendant may be liable. The Broadwaters maintain that the power to permit or prohibit use of the chattel is inherent in an entrustment, as opposed to a mere transfer, because that power to control imposes a duty upon the entrustor to guard against negligent use of the property. A

transferor without the power to control would have no such duty.

Respondents argue that the significant point in time is the time of the entrustment and that there need only be negligence at the time of entrustment, not a continuing right to control. If the entrustment was negligent when made, and that negligence was a proximate cause of the foreseeable injury complained of, the entrustor will be liable to the injured party. Respondents recognize that an entrustment can be, but need not be, a continuing event. As such, they argue, an entrustment can occur even if the entrustor was not the owner of the chattel, if the entrustor has the ability to control use of the chattel. Respondents rely on § 390 of the Second Restatement of Torts and *Kahlenberg v. Goldstein,* 290 Md. 477, 431 A.2d 76 (1981), for the proposition that Maryland law does not require continuing control of the chattel. Alternatively, they suggest that even if continuing control is required to impose liability under the doctrine of negligent entrustment, the evidence at trial established that Dr. and Mrs. Broadwater in fact had the power to control Ronald, Jr.

The doctrine of negligent entrustment has been part of the law of Maryland since 1934. In *Rounds v. Phillips (Rounds I),* 166 Md. 151, 170 A. 532 (1934), the first case in this State recognizing the doctrine of negligent entrustment, this Court quoted with approval § 260 of the Restatement of the Law of Torts, the precursor of § 390 in the Second Restatement. The Court noted:

> We are of [the] opinion ... that the principle contained in the quotation from the *Restatement* is a fair and accurate statement of the rule, deduced from opinions representing the great weight of authority in this country. Of course, there are, and must be, *limitations upon the application of the rule* ....

*Rounds I,* 166 Md. at 166–67, 170 A. at 538 (emphasis added).

Section 390 of the Second Restatement of Torts, Chattel for Use by Person Known to be Incompetent, is a "special application" of § 308, Permitting Improper Persons to

Use Things or Engage in Activities. RESTATEMENT (SECOND) OF TORTS, *supra*, § 390 cmt. b; *see also Casebolt v. Cowan*, 829 P.2d 352, 357 (Colo.1992). Section 308 provides that

> [i]t is negligence to permit a third person to use a thing or to engage in an activity which is *under the control of the actor*, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

RESTATEMENT (SECOND) OF TORTS, *supra*, § 308 (emphasis added). Sections 390 and 308 are *in pari materia*, and must be read together. *Cf. State v. Bricker*, 321 Md. 86, 93, 581 A.2d 9, 12 (1990) (statutes that are *in pari materia* should be harmonized as much as possible). Thus, § 308's reference to a "thing or . . . activity which is under the control of the actor" limits § 390's broad reference to "one who supplies . . . a chattel for the use of another." The comments to § 308 elaborate on this limitation:

> The words "under the control of the actor" are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.

RESTATEMENT (SECOND) OF TORTS, *supra*, § 308 cmt. a. Reading § 308 and § 390 together, we hold that the doctrine of negligent entrustment is generally limited to those situations in which the chattel is under the control of the supplier at the time of the accident. Ordinarily, without the right to permit or prohibit use of the chattel at the time of the accident, an individual cannot be liable for negligent entrustment.

In *Rounds v. Phillips (Rounds I)*, 166 Md. 151, 170 A. 532 (1934), this Court held that parents of a minor child, known to the parents to be a reckless driver, were responsible for damages to a third party resulting from the son's negligent use of an automobile owned by the mother. *Id.* at 167, 170 A. at 538. The Court explained that

the theory upon which the [plaintiff's] declaration is drawn . . . rests solely upon the primary negligence of the [parents] themselves in permitting their son, alleged to have been habitually reckless, negligent, and incompetent in the operation of automobiles, to be in possession of and operate the Buick . . . at the time of the accident. . . .

*Id.* at 160, 170 A. at 535 (emphasis added). We established in *Rounds I* that the basis for liability under the doctrine of negligent entrustment is the power to permit and prohibit the use of the entrusted chattel. The father in the *Rounds* case, although he did not own the car, was nonetheless responsible for the damages caused by his son because he "had the authority and power to permit the use by the son of the mother's automobile, or to prohibit it." *Rounds v. Phillips (Rounds II)*, 168 Md. 120, 124, 177 A. 174, 175 (1935).

In *Neale v. Wright*, 322 Md. 8, 585 A.2d 196 (1991), our most recent case to consider negligent entrustment, this Court held that a co-owner of an automobile lacks the right to control the use of the co-owned property and may not be held liable on a theory of negligent entrustment for damages resulting from the other co-owner's negligent use of the car. Mr. and Mrs. Neale co-owned an automobile. The husband had a poor driving record and injured the plaintiff while driving the jointly owned car. The plaintiff sued Mrs. Neale on a theory that Mrs. Neale had negligently entrusted the co-owned automobile to her husband. The Court concluded:

[I]n order for Mrs. Neale to have "supplied" the car to Mr. Neale at the time of the accident, and thus be liable under a negligent entrustment theory, she had to have the power to permit or prohibit Mr. Neale from using the vehicle. That power could emanate from a superior right to control the operation of the car, or from a special relationship between the "entrustor" and the driver, such as a parent-child relationship. . . .

*Id.* at 19, 585 A.2d at 201 (citations omitted); *see also Snowhite v. State, Use of Tennant*, 243 Md. 291, 314, 221 A.2d 342, 355 (1966) (limiting negligent entrustment liability to those

suppliers who have the right to permit as well as power to prohibit).

Respondents rely on *Kahlenberg v. Goldstein,* 290 Md. 477, 431 A.2d 76 (1981), for the proposition that control at the time of the accident is not a prerequisite for liability under the doctrine of negligent entrustment. In *Kahlenberg,* a father provided funds for his son to purchase an automobile and shortly thereafter the son was involved in a single car accident, injuring the plaintiff, a passenger in his car. *Kahlenberg,* 290 Md. at 484, 431 A.2d at 81. Despite the father's protest that he did not have the right to permit and prohibit the son's use of the car, we held that the father was liable for the damages caused by the son's accident because he gave his son the car knowing his reckless propensities. *Id.* at 491, 431 A.2d at 84. The Court noted:

> The holding in this case goes no further than to recognize that the principle expressed in § 390 applies where a gift of an automobile is made to a member of the donor's immediate family.

*Id.* at 489, 431 A.2d at 83.

*Kahlenberg* is distinguishable from the case before us because *Kahlenberg* involved a minor child. *Id.* at 479 n. 1, 431 A.2d at 78 n. 1. The father in *Kahlenberg,* like the father in *Rounds,* had the right to control his minor son's use of the car, even if he did not have the right to control the car directly. In *Neale,* 322 Md. at 18, 585 A.2d at 201, we noted:

> "[I]n *Kahlenberg* . . . there existed a parent-child relationship between the defendants and the entrustees. Mr. Kahlenberg's son was living at home with his parents and was still a minor.

We intended to limit the application of *Kahlenberg* to those cases involving a parent/minor-child relationship. *Id.* at 18–19, 585 A.2d at 201.

We agree with our sister states that have concluded that "the paramount requirement for liability under a theory of negligent entrustment is whether or not the defendant had a right to control the vehicle." *Lopez v. Langer,* 114 Idaho 873,

761 P.2d 1225, 1227 (1988); *see Casebolt v. Cowan,* 829 P.2d 352, 359 (Colo.1992); *Alioto v. Marnell,* 402 Mass. 36, 520 N.E.2d 1284, 1286 (1988); *Mills v. Continental Parking Corp.,* 86 Nev. 724, 475 P.2d 673, 674 (1970); *see also* 1 S. SPEISER ET AL., THE AMERICAN LAW OF TORTS § 4:10, at 594 (1983) ("The gist of the negligent entrustment is the *right of control* of the entrustor over the vehicle or instrumentality entrusted."); *cf. Mejia v. Erwin,* 45 Wash.App. 700, 726 P.2d 1032, 1034 (1986). Among the states that have decided cases involving a parent's sale or gift of an automobile to an adult child, nearly all reach the same conclusion as we do today. *See Shipp v. Davis,* 25 Ala.App. 104, 141 So. 366, 367 (1932); *Peterson v. Halsted,* 829 P.2d 373, 379 (Colo.1992); *Estes v. Gibson,* 257 S.W.2d 604, 607–08 (Ky.Ct.App.1953); *Lopez,* 761 P.2d at 1228; *Zedella v. Gibson,* 165 Ill.2d 181, 209 Ill.Dec. 27, 31, 650 N.E.2d 1000, 1004 (1995); *Tosh v. Scott,* 129 Ill.App.3d 322, 84 Ill.Dec. 631, 632, 472 N.E.2d 591, 592 (1984); *Fischer v. Lunt,* 162 A.D.2d 1016, 557 N.Y.S.2d 220, 221 (1990); *Rosenfeld v. Tisi,* 151 A.D.2d 739, 542 N.Y.S.2d 762, 763 (1989); *Brown v. Harkleroad,* 39 Tenn.App. 657, 287 S.W.2d 92, 96 (1955). For example, in *Peterson v. Halsted,* 829 P.2d 373, the Petersons helped their twenty-five-year old daughter purchase an automobile, knowing that she had a history of excessive alcohol consumption. While intoxicated, she drove her car into the plaintiff's vehicle, injuring the plaintiff. The court concluded that the Petersons could not be liable for negligent entrustment because they had no control over the driving activities of their adult daughter.[1] *Peterson,* 829 P.2d at 379. In sum-

---

1. In a footnote, the Colorado Supreme Court noted that although there was evidence that the Petersons had once taken away their daughter's keys and kept them overnight, the parents had no *right* to do so. *Peterson v. Halsted,* 829 P.2d 373, 379 n. 9 (Colo.1992).

  Similarly, in 1989, when Ronald, Jr. was twenty-three years old, Mrs. Broadwater told Ronald, Jr. that he must remove his name from the title to a Corvette that was titled jointly in Ronald, Jr.'s and Dr. Broadwater's names. Ronald, Jr. complied and removed his name from the title.

  Although this incident may illustrate Mrs. Broadwater's influence, she apparently had no legal right to force Ronald, Jr. to remove his name from the title.

mary, we agree with the description of the doctrine expressed by the Kentucky intermediate appellate court in *Estes v. Gibson*, 257 S.W.2d at 607–08: "The doctrine ought not to be extended where the party sought to be charged had no control over the machine and the other party actually committing the injurious wrong was the owner, *sui juris.*"

We found only one case holding parents liable for damages caused by an adult child's negligent use of an automobile that the parents had provided. In *Golembe v. Blumberg*, 262 A.D. 759, 27 N.Y.S.2d 692, 692 (1941), the appellate division of the Supreme Court held parents liable for having purchased a car for their adult, epileptic son who then had an epileptic seizure while driving the car, injuring the passengers. We find this case unpersuasive. *See Brown v. Harkleroad*, 39 Tenn.App. 657, 287 S.W.2d 92, 96 (1956) (rejecting *Golembe* ). Two subsequent New York cases reach an opposite conclusion and undermine the authority of this holding. *Fischer*, 557 N.Y.S.2d at 221 ("[Father] cannot be liable to third parties under a theory of negligent entrustment of a dangerous instrumentality in the hands of his adult son."); *Rosenfeld v. Tisi*, 542 N.Y.S.2d at 763 (holding that mother who "neither owned vehicle in question nor had control over her daughter" could not be liable, as a matter of law, for damages caused by daughter's negligent driving).

We turn now to the facts of the case before us. Undoubtedly, Dr. and Mrs. Broadwater significantly influenced their adult son. Except for a brief period when he lived in an apartment paid for by his parents, Ronald, Jr. has lived with Dr. and Mrs. Broadwater his entire life. Petitioners have always provided the financial support for Ronald, Jr. They gave him spending money, included him on their automobile insurance policy, paid traffic fines, and hired counsel to represent him in traffic proceedings. To the limited extent Ronald, Jr. has been employed, his father has been his only employer.

■ We must, however, focus on Petitioners' *rights* as the parents of an adult child, not their influence on Ronald, Jr. Generally, when a child reaches the age of majority, the

parent's legal responsibility ends and, concomitantly, the parent's legal right to control the actions of the child also ends.

Dr. and Mrs. Broadwater had no legal right to control Ronald, Jr. at the time of the accident because he was an adult. Their continuing financial support of their son does not confer on them any legally cognizable right to control his actions. Nor did Petitioners have any right of control over the Mazda involved in the accident. Regardless of whether Dr. and Mrs. Broadwater sold Ronald, Jr., the car or gave it to him as a gift, under the circumstances of this case, their ability to exercise control over the car ended when they relinquished title.[2]  Accordingly, we reverse.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED.  CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THAT COURT WITH DIRECTIONS TO ENTER JUDGMENT IN FAVOR OF PETITIONERS.  COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.*

---

**2.** This is not to suggest that title is always dispositive of the legal right to control chattel.  This Court has acknowledged that the legal right to control can exist independent of title, such as when a bailee permits an intoxicated person to drive a car that is in the bailee's possession.  *See Smith v. Branscome*, 251 Md. 582, 600–01, 248 A.2d 455, 466–67 (1968).  In *Branscome*, this Court wrote: "Milton as the bailee of the owner, Green, had the right to control the Green automobile.  He was given the power to exercise this right by the delivery by Green of the automobile keys to Milton." *Id.* at 601, 248 A.2d at 467; *see Rounds v. Phillips (Rounds I)*, 166 Md. 151, 167, 170 A. 532, 538 (1934).

In the present case, however, the car was retitled in Ronald, Jr.'s name, indicating that Dr. and Mrs. Broadwater did not intend a bailment or any other arrangement in which they would maintain legal control over the automobile.