694 A.2d 497

**MLT ENTERPRISES, INC.**

v.

**Arnold MILLER, et al.**

No. 1532, Sept. Term, 1996.

Court of Special Appeals of Maryland.

June 2, 1997.

Michael J. McAuliffe (Quinn, McAuliffe & Rowan, on the brief), Rockville, for Appellant.

Gary M. Anderson, Laurel, for Appellees Arnold Miller, et al.

Toni E. Clarke (Reichelt, Nussbaum, LaPlaca & Miller, on the brief, for Appellee Glenrock Joint Venture), Greenbelt, for Appellees.

Argued before CATHELL and DAVIS, JJ., and THEODORE G. BLOOM, Judge (retired), Specially Assigned.

DAVIS, Judge.

MLT Enterprises, Inc. (MLT) appeals from a judgment of the Circuit Court for Montgomery County (Chapin, J.) in favor of Arnold Miller (Miller) and Glenrock Joint Venture (Glenrock). Miller cross-appeals from a judgment in favor of MLT. The procedural history and facts of this case are set forth *infra.*

## FACTS

Under MD. RULE 8–501(g) (1997), the parties have filed an Agreed Statement of Facts. All parties, however, have filed additional Statements of Facts in their respective briefs, purporting to supplement the Agreed Statement of Facts. We think it unhelpful to attempt a supplemental exposition of facts after reproducing the Agreed Statement of Facts. For clarity, we set forth below our own Statement of Facts, juxtaposing those facts to which all parties have agreed with other facts helpful to the proper resolution of the case.

On September 7, 1994, Miller filed suit against MLT for payments allegedly due under an installment note. At the same time, Miller filed a Request for Writs of Attachment before Judgment and affidavits in support of the writs. On the same day, Miller filed an Amended *Ex Parte* Request for Writs of Attachment before Judgment. The Request was granted on September 7, 1994, on condition that Miller post a bond in the amount of $52,000 for the satisfaction of all costs and damages that may be awarded to MLT or a claimant of the property attached by reason of the attachment. The bond

was filed on September 9, 1994, and the attachments on the original process were issued.

On September 14, 1994, MLT filed Motions to Vacate the Attachment before Judgment and release the property, as well as a Motion to Dismiss the Complaint. These Motions were denied on October 26, 1994, so the Attachment remained in place. On October 25, 1994, MLT filed a Counter–Complaint against Miller for abuse of process and civil conspiracy stemming from Miller's attempt to collect on what MLT claimed was a worthless note. MLT also filed various Third–Party Complaints, all of which were ultimately dismissed.

The property attached by Miller can be divided into two groups. The first group consisted of all equipment and personal property of MLT located at MLT's place of business, 10026 Darnestown Road, Rockville, Maryland 20850. MLT operated a pizza restaurant; the equipment can generally be classified as restaurant equipment.

The second asset attached was a note owed to MLT by Behzad Safavieh. Safavieh owed MLT $22,000, payable at the rate of $1,000 per month. By Order of the Circuit Court for Montgomery County, issued on January 26, 1995, Safavieh's payments were made into the Court registry. At the time of trial, the payments made by Safavieh on the note totalled $17,000.

On March 7, 1995, the circuit court issued an Order to sell the attached property located at 10026 Darnestown Road, Rockville, Maryland 20850. All parties consented to the sale, provided that the proceeds were placed into the Court registry. The proceeds of the sale came to $23,500, and the money, as agreed, was deposited in the Court registry.[1]

On July 13, 1995, Glenrock Joint Venture (Glenrock) filed a Motion to Intervene as a Plaintiff. On November 7, 1995, Glenrock was permitted to intervene, and it filed a Complaint

---

1. The proceeds of the sale ultimately awarded by the court to Glenrock came to $23,217.50. Apparently, $282.50 of this money was used to pay a company to move the equipment.

in Intervention against MLT and Miller, which it amended. The Amended Complaint in Intervention alleged that the restaurant equipment had belonged to Glenrock, and demanded judgment against MLT and Miller, jointly and severally, for $23,500, the proceeds from the sale of the property. It also requested that the money be paid out of the Court Escrow Account (the registry) into which the proceeds were deposited after the sale of the equipment. The Amended Complaint also alleged that MLT owed Glenrock, the owner of the subject property, unpaid rent under a lease. Glenrock demanded judgment for $57,226.32, plus fees and costs.

On December 6, 1995, the circuit court granted MLT's Motion for Summary Judgment with respect to Miller's original Complaint. Therefore, the Counter–Complaint filed by MLT against Miller and the Amended Complaint in Intervention filed by Glenrock were the matters set for trial. The matter came for trial before the circuit court (Chapin, J.) on February 13 and 14, 1996.

At trial, Glenrock and MLT informed the court that they had settled Glenrock's rent claim for $11,000. The agreement called for Glenrock to be paid from the proceeds being held in the court registry. MLT presented its case in chief for the Counter-Complaint against Miller, and Glenrock then presented evidence in support of its Amended Complaint in Intervention against Miller and MLT. Counter–Defendant (and Defendant in Intervention) Miller moved for judgment. The court granted him judgment on MLT's Counter–Complaint.

The court then issued rulings dispositive of all remaining issues. Glenrock had presented evidence during trial that it had rented the premises to previous tenants who had defaulted on their leases. Glenrock claimed that, under the terms of those leases, it took ownership of all equipment on the premises before MLT ever signed a lease. The court agreed and ruled that Glenrock owned the equipment.

The circuit court next determined the account from which Glenrock's ownership interest in the restaurant equipment would be paid. Although Glenrock, in its Amended Com-

plaint, had originally asked that the court withdraw the funds from the court registry, in its opening statement Glenrock added the possibility that the court might consider charging the $23,500 to the bond filed by Miller. In a colloquy with the court following its case-in-chief, Glenrock specifically requested that the money be charged against the bond as damages rather than withdrawn from the registry. Miller contested this request. MLT did not.

Characterizing the money due Glenrock as damages incurred as a result of the improper Attachment before Judgment, the court ruled that the $23,500 was to be levied against the bond posted by Miller. The court also issued an oral ruling that Glenrock was entitled to $822.50 in damages against the bond. This represented interest on the proceeds from the sale of the restaurant equipment that Glenrock was prevented from obtaining for the duration of the Attachment.

To MLT, the court said it would award $722.50 against the bond, representing interest for the $17,000 of periodic payments on the notes made into the registry, the use of which MLT was deprived while the Attachment was in place. The court also awarded MLT $8,250 against the bond. This represented three-fourths of the rent settlement of $11,000 with Glenrock, damages that the Attachment caused MLT when Glenrock was unable to mitigate its loss of rental income for the premises during the Attachment period. Finally, the court stated that it would award $1,071 against the bond to MLT for court reporter's costs incurred by the need for depositions concerning the Attachment. The court instructed counsel for Glenrock to prepare an appropriate Order. Counsel did prepare such an Order, but the court held the Order pending the hearing on the Motion to Alter or Amend the Judgment that Glenrock subsequently filed.

On February 20, 1996, Glenrock filed a Motion to Alter or Amend Judgment. MLT, as a Defendant in Intervention, opposed the Motion. On March 18, 1996, the court conducted a hearing on Glenrock's Motion. On March 20, 1996, the court

issued a written Order granting the Motion in part. Subsequent post-trial Motions were denied.

The Amended Judgment changed the original Judgment in two respects. It changed the proceeds from the sale of the attached restaurant equipment from $23,500 to $23,217.50. It also ordered that the proceeds, to be distributed to Glenrock, not be charged against the bond, as originally ordered, but withdrawn from the court registry into which the proceeds had been deposited after the sale. By its action, therefore, the court impliedly concluded in its Amended Judgment that the money did not represent damages incurred by the improper Attachment (and thus properly levied against the bond); the money was merely the proceeds from the sale of the restaurant equipment, to be returned to the equipment's rightful owner, Glenrock. The court left intact its ruling that $822.50, representing damage incurred by Glenrock because Glenrock could not use the $23,500 during the Attachment, be charged against the bond.[2] MLT appealed, and Miller cross-appealed. We discuss MLT's appeal first.

## MLT's Appeal

In this appeal, MLT seeks a review of the circuit court's Order issued on March 20, 1996, granting Glenrock's Motion to Alter or Amend the Judgment. Because no additional relief is sought against Miller, he takes no active part in this appeal. For the same reason, Selective Insurance Company of America (which issued the bond for the Attachment before Judgment) takes no active role in this appeal. MLT is not seeking any additional relief against either Miller or the Surety. Miller does not appeal the grant of summary judgment with respect to his underlying complaint. MLT does not appeal the judgment granted by the circuit court against it with respect to its Counter–Complaint against Miller. The only issues on this appeal involve the circuit court's determina-

---

2. Illustrations of the payments made into and from the bond and the court registry are appended at the end of this opinion as Attachment A and Attachment B, respectively. Attachment B denominates the court registry as "Court Escrow."

tion that Glenrock owned the equipment located at 10026 Darnestown Road, Rockville, Maryland 20850, and the court's award, taken from the court registry, to Glenrock of the proceeds of the sale of the equipment. MLT contends that it owned the restaurant equipment, and that it should have received the proceeds from the court registry. Specifically, MLT presents two questions for our review which, in light of our resolution of the issues, we rephrase and consolidate as follows:

Did the circuit court err in finding that Glenrock owned the restaurant equipment without soliciting a rebuttal argument by MLT, and in later denying MLT the opportunity to prove that it owned the equipment?

We answer in the negative and affirm the circuit court on this issue.

## ANALYSIS

A prospective intervenor files and serves a motion to intervene and a copy of the proposed pleading. If the motion is granted, the intervenor files the pleading and serves it upon all parties. MD. RULE 2–214(c) (1997). If a person intervenes as a plaintiff, the pleading filed is a complaint. *See* RULE 2–301 (a civil pleading must be a complaint, a counterclaim, a cross-claim, a third-party complaint, or an answer or reply to an answer); RULE 1–202(r) (same).

Every defense of fact to a claim for relief in a complaint must be asserted in an answer, with certain exceptions not relevant here. RULE 2–323(a). Averments in a pleading to which a responsive pleading is required are admitted unless denied in the responsive pleading. RULE 2–323(e). The exceptions to this rule do not apply here.

■ Glenrock's Amended Complaint in Intervention asserted Glenrock's ownership interest in the restaurant property, and explicitly laid claim to "that portion of money in [the court's registry] representing the proceeds of the sale of the [restaurant equipment]." MLT filed no answer when served with the Amended Complaint. Miller, the other Defendant in

Intervention, filed an answer, but did not appeal from the court's eventual decision regarding the ownership of the restaurant equipment. On these facts alone, we conclude that MLT admitted that Glenrock owned the restaurant equipment and was estopped from denying it later in the trial. The court erred neither in making its factual finding at the close of Glenrock's evidence nor in refusing MLT the opportunity to present rebuttal evidence at the hearing on the Motion to Alter or Amend the Judgment. The matter was closed.

Even if the court could have allowed MLT to attempt a rebuttal of Glenrock's claim of ownership at the end of Glenrock's case-in-chief, MLT failed to object to the court's factual finding at the time the court made it. MLT thus failed to preserve any objection to the court's finding that MLT may have had. In addition, during Glenrock's case-in-chief and while making its closing argument, MLT never contested ownership of the restaurant property. Even when MLT presented testimony at the end of Glenrock's case-in-chief regarding the ownership of personal property (as opposed to equipment) at the premises, it did not contest Glenrock's claim of ownership of the restaurant equipment. We cannot allow MLT to contest this claim of ownership now.

In an attempt to win another bite at the apple, MLT argued in the circuit court that Glenrock, in filing a Motion to Alter or Amend the Judgment, was reneging on their settlement agreement. By requesting that its ownership interest be drawn from the court registry rather than charged against the bond, MLT argues, Glenrock was violating an agreement that all claims between MLT and Glenrock would be settled with $11,000 from the proceeds in the court registry. MLT argues that, at trial, it failed to challenge Glenrock's claim to ownership of the equipment in reliance on the settlement; because Glenrock had asked the court to charge the $23,500 to the bond, argues MLT, MLT had no interest at stake vi-sa-vis the restaurant equipment.

Assuming *arguendo* that MLT was justified in believing that Glenrock was seeking the proceeds of the equipment sale

from the bond instead of the court registry, MLT's argument is still unpersuasive. Fundamentally, it assumes that two parties in multiparty litigation have the power to decide between themselves the fate of all parties. If the proceeds of the sale were charged against the bond, as MLT claims the parties agreed, then Miller would effectively pay the $23,500. It requires no lengthy discussion to conclude that bestowing this power upon MLT and Glenrock is certainly the wrong result.

■ Moreover, the nature and purpose of the bond, in a very real sense, determines the outcome of any allocation of funds as between the bond and the court registry. RULE 2–115(c) states that a plaintiff's bond is posted in order to satisfy "all costs and damages that may be awarded the defendant or a claimant of the property by reason of the attachment." To be awarded money from a bond posted in return for an Attachment before Judgment, therefore, two requirements must be met: money from the bond must be to reimburse costs or remedy damages only, and the costs or damages must have been caused by the attachment itself. *Id.* Unless those two conditions are met, then the court may not award money to a party against the bond. The circuit court clearly had those requirements in mind when it altered its judgment and ordered the proceeds of the sale to be drawn from the court registry rather than charged against the bond. Given the limits upon the court's discretion imposed by RULE 2–115(c), we fail to see how two litigants may decide between themselves that a settlement amount will be charged against a bond filed in return for an Attachment before Judgment.

■ Finally, we disagree with MLT's assertion that it justifiably relied on Glenrock's position that the proceeds from the sale of the restaurant equipment should be charged against the bond. It is true that, at the close of its case-in-chief, Glenrock requested that the money come from the bond rather than from the court registry. In its Amended Complaint, however, Glenrock specifically requested that the funds from the proceeds of the sale be withdrawn from the court

registry, where they had been deposited. In a proposed settlement agreement between Glenrock and MLT submitted for signature before trial, Glenrock asserted its ownership interest in the proceeds of the sale of the restaurant equipment, "which proceeds are currently being held in the [court registry]." [3] In its opening statement, Glenrock reminded the court that the Amended Complaint asked that the judgment be paid from the court registry.[4]

In short, not until closing arguments did Glenrock specifically request that the judgment be charged against the bond only, rather than deducted from the money deposited in the court registry. By this time, Glenrock had asserted its ownership of the restaurant equipment, it had put on evidence that it owned the equipment, and the court had found that Glenrock owned the equipment. Glenrock had consistently asserted that it would seek its judgment from the court registry. At no time did MLT assert a countervailing claim of ownership. MLT's opposition at the March 18, 1996 hearing to the court's factual findings came too late, as did its objection to withdrawing the sale proceeds from the court registry. The court properly rejected MLT's arguments.

### Miller's Cross–Appeal

Miller appeals from the circuit court's award in favor of MLT under Md. Rule 2–115(j) (allowing the court, when judgment is entered in a defendant's favor, to award to the defendant damages caused by the Attachment). We note that MLT filed no brief in Miller's appeal. The court had entered judgment to MLT for $10,043.50 against the bond, representing damages from the loss of a potential tenant in the amount

---

**3.** Glenrock alleges in its brief that MLT refused to sign the agreement because of the continued assertion of ownership. For purposes of our analysis, the agreement is relevant only because it indicates that MLT was on notice before trial that Glenrock sought to withdraw the sale proceeds from the coffers of the court, not charge them against the bond.

**4.** Glenrock also, during its opening statement, stated that the court could, if it deemed it appropriate, charge the judgment against the bond.

of $8,250, interest on the monthly note payments deposited into the court registry, totalling $722.50, and costs in defense of the Attachment before Judgment, totalling $1,071. Miller challenges each of these awards in the following questions, which we restate as follows:

I. Did MLT provide evidence legally sufficient to prove it suffered damages as a result of the attachment of the restaurant equipment?

II. Did the interest rate ordered by the court exceed the constitutionally prescribed allowable pre-judgment interest rate?

III. Did the court award MLT deposition costs to which it was not entitled?

We answer "yes" to the first and second questions, reversing the court's judgment on the second issue. We cannot decide the merits of the third question.

## ANALYSIS

### I

*Damages For The Loss Of A Potential Tenant*

At trial, MLT presented evidence that, of the $11,000 in back rent upon which MLT and Glenrock had settled, Glenrock could have mitigated seventy-five percent, or $8,250, had not the Attachment prevented a prospective tenant from occupying and using the premises in early 1995. Thus, MLT argued, and the court ruled, that $8,250 should be charged against the bond as damages incurred by MLT as a result of the Attachment before Judgment. Miller argues that MLT failed to produce evidence legally sufficient to support the conclusion that the Attachment caused the damages.

Specifically, Miller makes three arguments. He contends that ownership of the restaurant equipment was the subject of legal controversy between MLT and Glenrock before the Attachment, and alone would have prevented the lease of the premises. Therefore, concludes Miller, the Attachment was

not the cause-in-fact of MLT's damages. Miller also argues that MLT and Glenrock arrived at the $11,000 rent settlement before any prospective tenant could be found. Thus, the argument posits, the Attachment could not have caused MLT damages because MLT agreed to pay $11,000 before Glenrock found a prospective tenant. Finally, Miller argues that Farideh Razavi–Rokni (Rokni), MLT's agent, misrepresented to several parties, including Miller, that MLT owned the restaurant equipment. Thus, Miller moved for the Attachment in ignorance of Glenrock's claim of ownership. Because of Rokni's misrepresentations, Miller concludes, any damage to Glenrock caused by the Attachment was unforeseeable, because Miller justifiably assumed that Rokni or MLT owned the equipment and that Glenrock had no ownership interest at the time of the Attachment.

As to Miller's first argument—that the legal controversy over the equipment prevented the Attachment from being the cause of MLT's damages—the circuit court, by awarding MLT damages from the bond, implicitly decided that the Attachment was a proximate cause of Glenrock's inability to relet the premises. We review the court's finding for clear error. *See* RULE 8–131(c) (1997) (trial court's decision on the evidence will not be set aside unless clearly erroneous). *See also Broadwater v. Dorsey*, 107 Md.App. 58, 71, 666 A.2d 1282 (1995) (causation is ordinarily an issue of fact), *rev'd on other grounds*, 344 Md. 548, 688 A.2d 436 (1997).

■ RULE 2–115(j) states that if judgment is entered for the defendant, "[o]n motion, the court shall ... assess and enter judgment for any damages sustained by the defendant by reason of the attachment." On its face, then, the rule requires the defendant to prove that the attachment caused the damages claimed. *Id.* Under both tort and contract law, one claiming damages must prove that tortious act or breach of contract was the proximate cause of the damages claimed. *Relay Improvement Ass'n v. Sycamore Realty Co.*, 105 Md. App. 701, 738, 661 A.2d 182 (1995), *aff'd, Sycamore Realty Co. v. People's Counsel*, 344 Md. 57, 684 A.2d 1331 (1996).

■ Miller's first argument disputes that whether the loss of a mitigating tenant was caused primarily by the Attachment. The trial court implicitly found that it was, and we see no clear error. "Recognizing that a single event is ordinarily the consequence of a number of causes, [the] Court [of Appeals] has stated that the proximate or legal cause of an injury is not necessarily the sole cause." *Medical Mut. Liab. Soc'y v. B. Dixon Evander and Assocs.,* 339 Md. 41, 55, 660 A.2d 433 (1995). The Court explained:

> " 'Plaintiff is not, however, required to ... negative entirely the possibility that the defendant's conduct was not a cause, and it is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant['s ... act] than that it was not.' "

*Id.* (quoted source omitted). To prevail, Miller must have demonstrated "not only that the same loss *might* have happened, but that it *must* have happened if the act complained of had not been done." *Id.; Baltimore & Potomac R.R. Co. v. Reaney,* 42 Md. 117, 137 (1874).

The court's conclusion that Miller did not demonstrate this will stand undisturbed. The ongoing controversy between MLT and Glenrock may have added to the uncertainty regarding ownership of the equipment, but that in itself is not fatal for the recovery of damages under RULE 2–115(j). Jerold Williamson, testifying for Glenrock, stated under questioning from the court that he could not give the potential mitigating tenant assurances on the equipment because the equipment was under an Attachment, and that this uncertainty prevented them from signing a lease. Without the Attachment, Glenrock may well have felt able to assure the prospective tenant that any ownership controversy would be resolved in its favor. The court did not err in its implied finding that the Attachment was the primary cause of MLT's damages.

Miller's second argument—that MLT incurred its damages (in the form of the $11,000 settlement) well before Glenrock found the prospective tenant—begs the question of whether

Glenrock was obligated to mitigate its own damages (for which MLT was responsible). MLT and Rokni's lease did not expire until October 1995, and Glenrock's action for rent sought the entire amount due under the lease, including the rent for which Rokni and MLT were responsible after MLT vacated the premises in September 1994. The Attachment, according to testimony, prevented Glenrock from reletting the property in January or February 1995. The $11,000 settlement figure was extrapolated from the total amount claimed in the action for rent filed by Glenrock. Thus, as the court found, Glenrock's inability to mitigate its own damages was a primary cause of three-fourths ($8,250) of Rokni's own liability. In fact, Rokni testified that she settled for such a high amount because the Attachment prevented Glenrock from mitigating its damages. There was no clear error.

Miller's third argument—that Rokni or MLT's misrepresentations of ownership rendered any damage incurred as a result of the Attachments unforeseeable—likewise fails to persuade. Without going into great detail, we think it reasonably foreseeable that an opposite party in litigation, or prospective litigation, may not be completely forthcoming, and in fact may be lying about one or more crucial aspects of a dispute. The circuit court noted that MLT "played fast and loose" with the facts, and appeared to have been willing to say whatever would fit its purposes best. Miller relied upon MLT's representations when it moved to attach the restaurant equipment. That is not enough, however, to render damages caused a third party by the wrongful attachment unforeseeable. A reasonable litigant could have foreseen that the claimant of the equipment may not own the equipment.

## II

### *Interest On The Note Payments*

The court awarded MLT $722.50 in damages on the bond, representing a six percent pre-judgment interest on the monthly payments on the note that had been attached and paid into the court registry. The court also awarded MLT the

payments that had been placed into the registry, which totalled $17,000. At trial, counsel for Miller informed the court that funds held in the court registry earn interest at a rate of three percent.

The court's Order stated, in pertinent part:

ORDERED, that all funds currently held in the Circuit Court Registry be released as follows: $34,217.50, payable to Glenrock Joint Venture ... and the balance to MLT Enterprises, Inc.....

Thus, the Order does not indicate how much money was in the court registry. Moreover, we cannot divine from the record the actual amount awarded to MLT from the registry, including interest. This is ultimately unimportant for our analysis, however, for the court clearly contemplated an award of six percent pre-judgment interest in addition to three percent on the funds in the registry:

THE COURT: I think this is right. The Court will award a judgment in the amount of $722.50, representing interest which was lost on the $17,000 worth of periodic payments that were paid into the court's coffers and were withheld from use by [MLT].

In doing so, *I assume that in addition to that interest, the account itself earned some interest that will benefit the defendant.*

During the March 18, 1996 hearing, the following colloquy, concerning interest on the bond for other amounts due Glenrock from the registry, occurred:

[MLT's COUNSEL]: The only question I have with reference to that is I just want to make sure that the Court is aware that the court registry funds do earn interest at three percent.

THE COURT: Sure, I am aware of that. How much?

[COUNSEL]: I believe it is three percent.

THE COURT: I am simply saying that they lost use of their money and that *it is worth a legal interest rate of six percent on top of that.*

The court awarded MLT $722.50, representing six percent of the note payments paid into the registry, fully aware that registry funds earn interest at a rate of three percent. Effectively, then, the court awarded MLT pre-judgment interest on the note payments at a rate of nine percent. Article III, § 57 of the Constitution of Maryland provides:

The Legal Rate of Interest shall be six percent, per annum; unless otherwise provided by the General Assembly.

Parties may stipulate to a higher rate contractually. ·See *Maryland Nat'l Bank v. Cummins,* 322 Md. 570, 600, 588 A.2d 1205 (1991); *First Virginia Bank v. Settles,* 322 Md. 555, 566, 588 A.2d 803 (1991). We are unaware that the General Assembly has provided a higher rate of pre-judgment interest on funds held in a court registry pending the outcome of litigation, and the parties have not contractually agreed upon a higher rate of interest. The court erred in awarding interest on the note payments in the court registry at an annual rate of nine percent.

### III

### *Deposition Costs*

The court awarded $1,071 to MLT under RULE 2–115(j), which allows an award of all damages incurred by the defendant by reason of the attachment. This figure was the sum of three bills charged MLT's attorney by Gore Reporting Company, which provided the services of a court reporter on three different deposition dates. Miller argues that these bills constitute attorney's fees and are unrecoverable under RULE 2–115(j). He also argues that the depositions concerned his claim on the note and MLT's counterclaims; to this extent, Miller claims, the costs should not have been awarded as damages or costs against the bond.

Miller relies on cases stating that counsel fees are generally not recoverable by the successful party in an action for damages. *See, e.g., Freedman v. Seidler,* 233 Md. 39, 47, 194 A.2d 778 (1963); *Hess Constr. Co. v. Board of Educ.,* 102 Md.App. 736, 739, 651 A.2d 446 (1995), *aff'd,* 341 Md. 155, 669

A.2d 1352 (1996). The Court of Appeals has held that counsel fees paid to vacate a wrongful attachment are not a recoverable element of damages. *Rhodes Hardwood Flooring Co. v. Blue Ridge Flooring Co.*, 225 Md. 158, 166, 169 A.2d 399 (1961). The transcription costs incurred by MLT were not counsel fees for purposes of an award under RULE 2–115(j), however, but costs. We draw this conclusion from the language of RULE 2–415(a), which governs the procedure to be used in taking depositions. That rule states that the "court may order one or more of the parties to pay the cost of transcription" of a deposition. If the court could order Miller to pay the cost of transcription under RULE 2–415(a), we see no reason why the court could not do so under RULE 2–115(j), or why payments classified as "costs" under the former rule should magically be transformed into unrecoverable "counsel fees" under the latter. At least within the narrow context of deposition transcription costs, therefore, the discretion invested in the court by RULE 2–415(a) allows the court to award the transcription costs under RULE 2–115(j) in this situation.

 We cannot reverse the circuit court's order based upon Miller's argument that the depositions dealt with topics other than the Attachment. In his brief, as he objects to the court's award, Miller does not direct us to specific portions of the record or record extract, but says generally:

> The Court's order requires payment, as damages, by Miller of MLT's deposition costs. Said depositions could well have been required regardless of the attachment in this matter, *to the extent they related to Miller's claim on the note involved.* Further, *to the extent MLT's deposition costs were related to MLT's counterclaims,* said counterclaims were denied by this Court and, therefore, MLT should be denied said costs.

(Emphasis added). The deposition transcripts on which the success of Miller's arguments depend are not contained in the record or the record extracts. Miller, as cross-appellant, carries the burden of persuasion on appeal that the court's order was in error. A part of this burden is the making of an

adequate record. *Bailey v. State,* 84 Md.App. 323, 333, 579 A.2d 774 (1990). We cannot decide the merits of Miller's claim when the record provides no basis for deciding how much of the depositions, if any, were related to matters other than the Attachments.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED IN PART AND RE-VERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID ONE–HALF BY APPEL-LANT/CROSS–APPELLEE MLT ENTERPRISES, INC. AND ONE–HALF BY APPELLEE/CROSS–APPELLANT ARNOLD MILLER.**

ATTACHMENT A

COURT AWARDED DAMAGES FROM BOND

ATTACHMENT B

COURT ESCROW ACCOUNT AND COURT AWARDED DAMAGES FROM ESCROW

**Note Payments**
$1,000.00/mo. for 17 mos. =
$17,000.000

inflow

**COURT ESCROW**

$40,217.50
(excluding 3% interest)

outflow

**MLT/Rokni**

$6,000.00 (remaining note payments)

Sale of Fixtures
$23,217.50

inflow

**Glenrock Joint Venture**

$23,217.50 (fixtures)

$11,000.00 (settlement)